MARION A. KEYES *vs.* CHECKER TAXI COMPANY.

WILLIAM A. KEYES *vs.* SAME.

Essex.    May 11, 1931. — May 26, 1931.

Present: CROSBY, PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Negligence,* Contributory, Motor vehicle, In use of way, Imputed. *Law of the Road. Practice, Civil,* Requests, rulings and instructions.

At the trial of an action by a woman, who was a guest in an automobile, for personal injuries sustained when the automobile was run into by a taxicab of the defendant, there was evidence that the accident

occurred late at night in a city; that the plaintiff was on the right side of the back seat of the automobile, whose driver, previous to the collision, was proceeding on a street toward an intersection with a second street, which crossed the first nearly at right angles, intending to continue on a third street which entered the same intersection and continued in the same general direction as the first street; that the plaintiff, who testified that she "did some looking out for herself," was looking toward her right, but, although her view was clear, she saw no approaching vehicle; that the driver of the automobile, proceeding slowly, crossed the intersection, and that, when almost the entire length of the automobile was beyond the intersection and in the third street, it was struck at the right rear wheel by the taxicab with such force that, although it weighed forty-two hundred pounds, the wheels were lifted, the driving shaft was detached from the body and the bumper was knocked in three or four feet toward the left hand curb. In crossing the intersection, the plaintiff's host did not go to the right of the intersection of the second and third streets. *Held,* that

(1) The question of negligence of the driver of the taxicab was for the jury;

(2) In the circumstances, there was no error in a refusal by the trial judge to instruct the jury, in substance, "If the operator of the plaintiff's automobile failed to keep to the right of the center of the intersection of" the third street in its junction with the second in turning into the third, "he thereby violated the ordinance with reference to making such left-hand turns";

(3) There was no evidence from which it could be ruled as matter of law that the plaintiff entrusted herself wholly to the care and caution of the operator, her host, without taking care for her own safety;

(4) The negligence of the operator, the plaintiffs' host, if there were any, could not be imputed to her.

An instruction to the jury in the judge's charge, defining the "intersection" and applying G. L. c. 89, § 8, as amended by St. 1926, c. 330, § 1, by stating that it was difficult to describe the intersection in the circumstances shown by a plan of the place of the accident which was in evidence because there were two streets coming in very close together and opening into another one, but that he "should suppose the point of intersection between" the first street and the second street would be that part found by the extension of the sides of the two streets, was free from error.

TWO ACTIONS OF TORT, the first for personal injuries sustained when an automobile in which the plaintiff was riding was run into by a taxicab of the defendant; and the second by the husband of the plaintiff in the first action for consequential damages. Writs dated November 3, 1927.

In the Superior Court, the actions were tried together before *F. T. Hammond,* J. A copy of a chart of the loca-

tion of the accident which was used at the trial was made a
part of the bill of exceptions and is shown below.

The defendant admitted that the taxicab in question
was owned by the defendant and was registered in its name,
and that the operator thereof, at the time of the collision,
was employed by the defendant and was acting within the
scope of his employment.

In direct examination, the plaintiff testified "that when
she got to Essex Street she looked to the right and straight

ahead but saw no approaching vehicle, but the next thing
she observed was that she saw lights bobbing up and down
in front of her eyes and turned quick but did not remember
anything." In cross-examination, she testified "that she
had driven a car herself for four or five years before the acci-
dent and had been in the vicinity of Essex and Chauncy
Street on other occasions before the accident; that she
looked to the right and Essex and Chauncy Street to Wash-
ington Street was perfectly straight and there was nothing
to prevent her from looking all the way to Washington

Street, and that if a vehicle was coming down and she did look she would have seen it; . . . that she relied on Mr. Cunningham's handling the automobile; that she trusted him with the operation or handling of the machine, but that she liked to know where she was going and was awake about it; that she entrusted her safety to Mr. Cunningham; that when she said she entrusted herself to Mr. Cunningham she meant that she knew the man; that he was a careful man and that she knew him just as she would if she were driving with her father; that she did some looking out for herself, it being hot and she turned every window down, but that was all she did, and apart from this she left everything in regard to her personal safety to Mr. Cunningham."

Other material evidence is described in the opinion. At the close of the plaintiff's evidence, the defendant rested and moved that verdicts be ordered in its favor. The motions were denied. A request for a ruling, denied by the judge, is quoted in the opinion. The judge's charge as to the law of the road, which was excepted to by the defendant, was as follows:

"Now, there is another statute; that is, in regard to the law of the road, when people meet at intersecting ways. In this case the accident happened at the junction of these two streets. As you know, there is this right of way statute, which provides, in substance, that every person driving an automobile approaching an intersecting way shall grant the right of way at the point of intersection to a vehicle approaching on his right. The vehicle approaching from his right has the right of way, with this proviso, that such vehicle is arriving at the point of intersection at approximately the same instant. . . . What does the point of intersection mean? Ordinarily, where you have two streets that cross each other . . . like a cross, the point of intersection is the area that is common to both streets; the square, in other words, formed by the side lines of the two streets. Now it is very difficult from this chalk [the chart shown on page 463] to . . . [describe exactly the point of intersection] applicable to this case, because there are two streets coming in very close together and opening out

into another one.  I should suppose the point of intersection between Essex Street and Chauncy Street would be . . . that part of Essex Street and Chauncy Street which would be common to both of them.  If you extended the west line of Chauncy Street across Essex, and the east line of Chauncy Street across Essex, and then extended the north and south lines of Essex Street to the west, you would get something like a square, which would be the point of intersection between Chauncy Street and Essex Street. Now, if two vehicles were approaching that point of intersection at approximately the same instant, one coming down Chauncy Street south, and the other going on Essex Street east, the vehicle which was coming on Essex Street, east, would have the right of way over the vehicle coming on Chauncy Street south . . . but this statute does not apply unless . . . they are approaching the point of intersection, that square, in other words, at approximately the same instant.  If the car going east on Essex Street would not come to that point of intersection at approximately the same instant, but some time subsequent to the time when the car coming down Chauncy Street south would get there, then that car going on Essex Street would not have the right of way.  If you should find that the taxicab — that is, if you should find that the two cars were approaching the intersection at approximately the same instant, and if you should find that the accident was caused by the car going down Chauncy Street not yielding the right of way to the taxicab, then there would be no negligence on the part of the taxicab driver, if the taxicab driver was driving his car in a reasonable way, and the collision was caused by the failure of the other car, Mr. Cunningham's car, to yield the right of way.''

There was a verdict for the plaintiff in the first action in the sum of $1,750, and for the plaintiff in the second action in the sum of $1,000.  The defendant alleged exceptions.

*T. H. Mahony*, for the defendant.

*J. W. Santry, Jr.*, (*J. H. Duffy* with him,) for the plaintiffs.

CROSBY, J.  These are actions of tort.  The first is brought to recover for personal injuries arising out of a

collision between an automobile in which the plaintiff was riding and a taxicab operated by a servant of the defendant; the second action, brought by the husband of the plaintiff in the first action, is for the recovery of consequential damages. The jury found for the plaintiffs and the cases are here on the defendant's exceptions to the refusal of the trial judge to direct a verdict for the defendant in each case, to the refusal to give a certain instruction and to portions of the charge.

The collision occurred in Boston about eleven o'clock in the evening of September 7, 1927. The plaintiff in the first action, who will hereafter be referred to as the plaintiff, was a guest in an automobile operated by one Charles H. Cunningham, and was seated on the right side of the rear seat. There was testimony from which it could have been found that the Cunningham automobile was proceeding along the right hand side of Chauncy Street toward Essex Street, the driver intending to cross Essex Street and enter Harrison Avenue, which leads off Essex Street on the other side thereof and somewhat to the right of Chauncy Street. Upon approaching Essex Street, the operator looked to the right and to the left, saw no automobile coming from the right on Essex Street, sounded his horn and started to cross Essex Street at a speed not in excess of ten miles an hour. When entering Harrison Avenue he saw lights from a motor vehicle coming from the right about twenty or thirty feet away, and when his automobile was almost into Harrison Avenue, the rear being about two feet out on Essex Street, it was struck at the right rear wheel. After the accident the Cunningham automobile was on the left side of Harrison Avenue and the taxicab was at the right of the automobile. The automobile in which the plaintiff was riding weighed about forty-two hundred pounds. As a result of the impact the wheels were lifted and the driving shaft was detached from the body of the automobile and "the bumper. . . . was knocked in towards the Harrison Avenue curb three or four feet." Cunningham testified that in crossing Essex Street he drove to the left side of Harrison Avenue and did not turn to the

right of the center of the intersection of Harrison Avenue and Essex Street. The plaintiff testified that when the automobile reached Essex Street she looked to the right and straight ahead and saw no approaching vehicle; that her view to the right was unobstructed; that just before the accident she saw lights which seemed to be partly from the side and front. There was further testimony that no vehicles were approaching from the right on Essex Street as the Cunningham automobile started to cross and that the view of its occupants to the right was unobstructed for three hundred or four hundred feet. All the testimony came from the plaintiff and witnesses called by her, the defendant offering no evidence.

It is plain that upon the entire evidence verdicts could not properly have been directed for the defendant. When a collision occurs under circumstances like those here present, at the corner of two streets or at an intersection of streets, the due care of the plaintiff and the negligence of the defendant are generally questions of fact for the jury. *Salisbury* v. *Boston Elevated Railway,* 239 Mass. 430. *Daris* v. *Middlesex & Boston Street Railway,* 241 Mass. 580. *Hamel* v. *Sweatt,* 256 Mass. 581. *Bogert* v. *Corcoran,* 260 Mass. 206, 209. *Bagdazurian* v. *Nathanson,* 269 Mass. 386. The jury could have inferred from the testimony that the taxicab was travelling along Essex Street at a high rate of speed, or that it turned into Essex Street from Harrison Avenue Extension (which joined Essex Street to the right of Chauncy Street) at a time when the Cunningham automobile was crossing Essex Street. The fact that the taxicab struck it in the rear when it had almost passed over Essex Street was a circumstance tending to show negligence of the defendant. *Payson* v. *Checker Taxi Co.* 262 Mass. 22, 26. The evidence required that the case be submitted to the jury upon the question of negligence of the defendant. *Barnett* v. *Boston Elevated Railway,* 244 Mass. 418. *Stickel* v. *Cassasa,* 268 Mass. 59. *Austin* v. *Eastern Massachusetts Street Railway,* 269 Mass. 420.

The defendant requested the judge to give the following instruction to the jury: "If the operator of the plaintiff's

automobile failed to keep to the right of the center of the intersection of Harrison Avenue in its junction with Essex Street in turning into Harrison Avenue, he thereby violated the ordinance with reference to making such left-hand turns." The judge refused to give this instruction, and the defendant excepted. This refusal was not erroneous. The requested ruling related to a fragmentary portion of the evidence; it was not a vital issue in the case and might properly be denied on this ground. *McDonough* v. *Vozzela,* 247 Mass. 552. *Coates* v. *Bates,* 265 Mass. 444. The plaintiff was not the operator of the automobile but was a guest sitting in the rear seat. There was no evidence from which it could be ruled as matter of law that she entrusted herself wholly to the care and caution of the operator without taking care for her own safety. The negligence of the operator, if there were any, could not be imputed to her. *Fahy* v. *Director General of Railroads,* 235 Mass. 510. *McDonald* v. *Levenson,* 238 Mass. 479. *Lambert* v. *Eastern Massachusetts Street Railway,* 240 Mass. 495, 500. *Pendleton* v. *Boston Elevated Railway,* 266 Mass. 214. See *Rea* v. *Checker Taxi Co.* 272 Mass. 510. She testified that she looked to the right and straight ahead as the automobile in which she was riding entered Essex Street and that she did not see the lights of the taxicab until "just before the crash."

The defendant excepted to that portion of the judge's charge relating to the law of the road. G. L. c. 89, § 8, as amended by St. 1926, c. 330, § 1. This exception cannot be sustained. The instructions were free from error. The explanation to the jury of the meaning of the words "point of intersection" found in the statute was in accordance with the interpretation of those words as laid down by this court. *Fournier* v. *Zinn,* 257 Mass. 575. *Cunningham* v. *New England Transportation Co.* 267 Mass. 238. *Mahoney* v. *Boston Elevated Railway,* 271 Mass. 274. See now St. 1929, c. 147.

As no error of law appears in the conduct of the trial the entry in each case must be

*Exceptions overruled.*